UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
LENCO DIAGNOSTIC
LABORATORIES, INC.,

                Plaintiff,

   -against-

MCKINLEY SCIENTIFIC, INC.;
MOLECULAR MS DIAGNOSTICS,
LLC; and ION TECHNOLOGY
SUPPORT, LLC,

                Defendants.
-----------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 15-CV-1435 (FB) (RML)

*Appearances:*
*For the Plaintiff*:
MIKHAIL RATNER
48 Wall Street, 11th Floor
New York, New York 10005

EUGENE STRUPINSKY
147 47th Street
Brooklyn, New York 11209

*For Defendant McKinley Scientific, Inc.*:
THOMAS H. RYAN
Laddey, Clark & Ryan LLP
60 Blue Heron Road, Suite 300
Sparta, New Jersey 07871

*For Defendant Molecular MS Diagnostics, LLC*:
TANIA N. SHAH
1674 Beacon Street, Suite 2
Brookline, Massachusetts 02445

**BLOCK, Senior District Judge:**

      In its Amended Complaint ("Am. Compl."), plaintiff Lenco Diagnostic Laboratories, Inc. ("Lenco"), a Brooklyn-based clinical laboratory, alleges claims of fraud, conspiracy to commit fraud, and unjust enrichment against defendants McKinley Scientific, Inc. ("McKinley"), and Molecular MS Diagnostics, LLC

("Molecular") (individually, "defendant," and collectively, "defendants"), both of whom provided allegedly defective products to plaintiff for the launch of its new toxicology lab in 2012. Molecular and McKinley move to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6), and, moreover, assert that the fraud claim does not comport with the heightened pleading requirements of Rule 9(b).[1] For the following reasons, the motions are denied.

# I

The facts are taken from the complaint. Both for 12(b)(6) and 9(b) purposes, they are viewed "in their totality, not in isolation," and "all reasonable inferences" are to be drawn in plaintiff's favor. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015).

**A.   Fraud**

The parties correctly concede that New York substantive law applies. *See Tehran- Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989). Under New York law, fraud requires proof of "a material misrepresentation or omission of a fact, knowledge of that fact's falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009). To withstand a Rule 12(b)(6) challenge, the complaint must allege facts "that plausibly support" these

---

[1] Lenco voluntarily dismissed its claims against the third defendant, Ion Technology Support, LLC.

("Molecular") (individually, "defendant," and collectively, "defendants"), both of whom provided allegedly defective products to plaintiff for the launch of its new toxicology lab in 2012. Molecular and McKinley move to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6), and, moreover, assert that the fraud claim does not comport with the heightened pleading requirements of Rule 9(b).[1] For the following reasons, the motions are denied.

# I

The facts are taken from the complaint. Both for 12(b)(6) and 9(b) purposes, they are viewed "in their totality, not in isolation," and "all reasonable inferences" are to be drawn in plaintiff's favor. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015).

**A.   Fraud**

The parties correctly concede that New York substantive law applies. *See Tehran- Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989). Under New York law, fraud requires proof of "a material misrepresentation or omission of a fact, knowledge of that fact's falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009). To withstand a Rule 12(b)(6) challenge, the complaint must allege facts "that plausibly support" these

---

[1] Lenco voluntarily dismissed its claims against the third defendant, Ion Technology Support, LLC.

elements. *Loreley*, 797 F.3d at 170 (quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 360 (2d Cir. 2013) (internal quotations omitted)).

When viewed as a whole, the detailed complaint does so. At its core, it describes the perpetration of a specific kind of fraud by McKinley and Molecular: the sale of more than a million dollars of "unsuitable equipment" and "shoddy services," Am. Compl. ¶ 48, that both knew to be "completely unsuited for [Lenco's] needs," *id.* ¶ 24, inconsistent with "basic science," *id.*, and riddled with "glaring" and obvious "errors," *id.* ¶¶ 55, 59, 42. When Lenco complained, defendants responded with "deliberate misrepresentations," *id.* ¶ 40, and "confusing or deliberately misleading answers," *id.* ¶ 51. Having paid more than "a million dollars," *id.* at 80, Lenco's subsequent and expensive attempts to "remedy" these defects were unsuccessful, *id.* ¶¶ 52–53.

Thus, defendants' 12(b)(6) motion is unfounded. But, "in conjunction with the facial plausibility standard of Rule 12(b)(6), [the plaintiff] must [also] satisfy the heightened pleading standard set forth in Rule 9(b)" which "places two further burdens on fraud plaintiffs—the first goes to the pleading of the circumstances of the fraud, the second to the pleading of the defendant's mental state." *Loreley*, 797 F.3d at 171. As explained by the Second Circuit in *Loreley*:

> As to the first, . . . the complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were

3

> made, and (4) explain why the statements (or omissions) are fraudulent."
> . . . As to the second, though mental states may be pleaded "generally,"
> [the plaintiff] must nonetheless allege facts "that give rise to a strong
> inference of fraudulent intent."

*Id.* (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004); quoting also *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006)).

The same allegations that survive the 12(b)(6) motion go a long way to satisfy the strictures of Rule 9(b), but the complaint alleges much more which clearly satisfies these additional pleading burdens, and further reinforces the denial of the 12(b)(6) motion.

As for the four-pronged first requisites, multiple paragraphs allege specific statements by McKinley and Molecular. *See, e.g.*, Am. Compl. ¶ 21 ("Steel repeatedly represented to [Lenco] that McKinley was going to be able to deliver precisely the type of 'turn-key' operation Lenco was looking for . . . ."); *id.* ¶ 22 ("Steel assured [Lenco] that Lenco would get the necessary licensure with the equipment and services purchased from McKinley."); *id.* ¶ 29 ("Both Steel and Magiera represented . . . that Magiera was an experienced consultant who would be responsible for getting DOH to certify Lenco for up to eight (8) separate methods."); *id.* ¶36 ("Both Steele and Magiera repeatedly represented . . . that the project was on track, that the equipment purchased by Lenco from McKinley and the methods being developed by Magiera

4

were totally appropriate for Lenco's needs."); *id.* ¶42 ("Steel and Magiera represented to Lenco that the errors leading to the failed Proficiency Test were minor and that McKinley and/or Molecular would correct these errors for future tests[,]" and "that Lenco's application for MS certification with DOH was very much on track and the failed Proficiency Tests were a minor set back.").

Those same paragraphs identify the speakers of the statements: Steel (or Steele)—a senior McKinley executive—and/or Magiera—Molecular's owner—and also set forth "where and when" the statements were made. And other paragraphs allege the requisite falsity. *See id.* ¶ 24 (accusing McKinley and Molecular of "induc[ing] Lenco, under false pretenses, to purchase (a) equipment that was completely unsuited for its needs and (b) a methodology that was not merely unsuited for the equipment McKinley peddled to Lenco, but failed to comply with basic science."); *see also id.* ¶¶ 42–43 (accusing both of "false[ly]" representing initial flaws as "minor"); *id.* ¶ 44 (accusing both of "fraudulently induc[ing] Lenco to sink more funds into a doomed project"). These averments are "specific affirmation[s] of an arrangement under which something is to occur." *Sabo v. Delman*, 3 N.Y.2d 155, 160 (1957) (cited by, e.g., *Marvin Inc. v. Albstein*, 386 F. Supp. 2d 247, 254 (S.D.N.Y. 2005)). When "made with a preconceived and undisclosed intention of not performing [them]," *Sabo*, 3 N.Y.2d at 160, as the complaint alleges, such allegations are not non-

5

actionable promises. Rather, they constitute "misrepresentation[s] of 'a material existing fact' upon which an action for [fraud] may be predicated." *Id.*

Lastly, the complaint provides "strong circumstantial evidence of conscious behavior and recklessness," and alleges facts "to show that defendants had both motive and opportunity to commit fraud." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). For example, it alleges that, although the equipment and methodologies sold by McKinley and Molecular were "completely unsuited for [Lenco's] needs" and "failed to comply with basic science," Am. Compl. ¶ 24, neither defendant hesitated to assure Lenco otherwise, *see id.* ¶ 36, both defendants derided fatal and obvious flaws discovered by others as "minor," *id.* ¶ 42, and they deliberately induced plaintiff "to go through with the purchase of . . . additional equipment and consulting services" from them "into a doomed project," *id.* ¶ 44. Thus, conscious misbehavior and fraudulent intent has been sufficiently plead.

Citing *Alnwick v. Euro. Micro Holdings, Inc.*, 281 F. Supp. 2d 629 (E.D.N.Y. 2003), Molecular and McKinley argue that the time periods alleged in the complaint regarding the fraudulent statements are not sufficiently precise. Rule 9(b), however, does not require such exactitude as long as fair notice of a plaintiff's claim has been given. *See O'Brien v. Nat'l Prop. Analysts Partners,* 936 F.2d 674, 676 (2d Cir. 1991) (noting that one of the purposes of Rule 9(b) is "to provide a defendant with fair notice of a plaintiff's claim"); *cf. United States ex rel. Lee v. SmithKline Beecham,*

6

*Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001) (observing that Rule 9(b) "does not require [plaintiff] to allege, in detail, all facts supporting each and every instance of false testing over a multi-year period").

Although the complaint occasionally references, as in *Alnwick*, broad time spans such as "Spring 2012" or "Spring/Summer 2012," *compare* Am. Compl. ¶¶ 28, 30, *with Alnwick*, 281 F. Supp. 2d at 640 (finding "in the Fall and Winter of 1996" to be too "vague"), it alleges specific months during most of the times when the fraudulent statements were made. *See* ¶¶ 21, 41, 45, 50, 57 (January, February, and March 2012; March 2013; July 2013; November 2013; and June 2014). As generally construed, Rule 9(b) requires no more. *See, e.g.*, *In re Revlon, Inc. Sec. Litig.*, 2001 WL 293820, at *8 (S.D.N.Y. Mar. 27, 2001) ("To satisfy Rule 9(b), . . . a plaintiff need not plead dates, times and places with absolute precision . . . ." (internal quotations omitted)); *United States ex rel. Tran v. Comp. Scis. Corp.*, 53 F. Supp. 3d 104, 123 (D.D.C. 2014) (noting that Rule 9(b) does not require "specific *dates*" (emphasis in original)); *Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, 223 F. Supp. 2d 474, 482 (S.D.N.Y. 2002) (finding sufficient specificity when plaintiffs alleged misrepresentations during a two-month period).

### B. Conspiracy to Defraud

In New York, a claim for a conspiracy to commit a tort "stands or falls with the underlying tort," *Romano v. Romano*, 767 N.Y.S.2d 841, 842 (2d Dep't 2003),

7

provided that "a common action for a common purpose by common agreement or understanding among a group" is also adequately alleged, *Faulkner v. City of Yonkers*, 963 N.Y.S.2d 340, 341 (2d Dep't 2013) (quoting *Goldstein v. Siegel*, 244 N.Y.S.2d 378, 382 (1st Dep't 1963). Here, having adequately alleged fraud, the complaint accuses Molecular and McKinley of hatching a "deliberate, coordinated scheme to fraudulently induce" Lenco to purchase their substandard products. Am. Compl. ¶¶ 73, 78. According to the complaint, as part of this "arrangement," McKinley and Molecular together "represented" known falsities to Lenco, "assur[ing]" it by means of "representations [that] were false and known to be false . . . when made." *Id.* ¶¶ 42–43. Allegations of such a "scheme"—the word employed by Lenco, *id.* ¶¶ 2, 24, 73, 75, 76, 78—suffice to plead "common action for a common purpose by common agreement," *Faulkner*, 963 N.Y.S.2d at 341, and hence conspiracy.

**C.     Unjust Enrichment**

Defendants contend that Lenco has impliedly conceded the existence of a contractual relationship between the parties, which would preclude any claim for unjust enrichment under New York law. *See Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."). The plaintiff, however, denies that the parties are contractually bound, Pl. Opp'n to Mot. to Dismiss at 10, and

8

there is nothing in the complaint or in the parties' submissions to otherwise inform the court. "[W]here there is a bona fide dispute as to the existence of a contract or the application of a contract in the dispute is in issue, a plaintiff may proceed upon a theory of quasi contract as well as breach of contract." *Scarola Ellis LLP v. Padesh*, 984 N.Y.S.2d 56, 59 (1st Dep't 2014) (quoting *Sabre Intl. Sec., Ltd. v. Vulcan Capital Mgt., Inc.*, 944 N.Y.S.2d 36, 41 (1st Dept.2012)).

Regardless, defendants contend that Lenco received functional equipment—"the benefit of the bargain"—so that neither defendant was unjustly enriched. But the complaint belies this argument in alleging that defendants' products proved so flawed as to be "beyond remedy" and "utterly unsuitable for the only purpose Plaintiff needed them," Am. Compl. ¶ 53, that defendants have wrongfully taken "over a million dollars of Plaintiffs' money" while "never delivering on the end-product to Plaintiff," and that Lenco had "to start from scratch in [its] efforts to certify for clinical toxicology services," *id.* ¶ 80. In alleging a benefit the defendants obtained, an expense that plaintiff incurred, and defendants' fraudulent behavior, the unjust enrichment claim satisfies New York law. *See, e.g.*, *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586-87 (2d Cir. 2006) (summarizing the New York law of unjust enrichment).

## II

Molecular makes two separate arguments. First, that it only served as McKinley's agent and thus cannot be liable as a matter of law, heavily relying on *Owen Steel Co., Inc. v. George A. Fuller Co.*, 563 F. Supp. 298 (S.D.N.Y. 1983). In that case, plaintiff had conceded that one defendant was the "disclosed principal" and a second "merely its agent." *Id.* at 299-300. Here, however, contrary to *Owen Steel*, while plaintiff alleges that Molecular "*also* acted as [an] agent[]" of McKinley, Am. Compl. ¶ 32 (emphasis added), Lenco alleges, in addition, that Molecular made independent fraudulent statements regarding its own goods. *See id.* ¶ 29 (summarizing Molecular's promises); *see also id.* ¶ 34 (listing Molecular's services); *id.* ¶ 36 (summarizing Molecular's later guarantees); *id.* ¶ 50 (stating some of the alleged flaws found by others in Molecular's methodology); *id.* ¶ 53 (summarizing an outside consultant's conclusion regarding Molecular's product). Thus, the plaintiff has alleged that Molecular was more than just an agent.

Finally, Molecular faults the plaintiff's pleading for not differentiating amongst the defendants by not always spelling out their respective misdeeds. However, Lenco's use of collective phrases and group allegations is an acceptable means of pleading. *See, e.g.*, *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 345 (E.D.N.Y. 2014) (accepting "group pleading" in the context of a common-law

fraud claim); *Loreley*, 797 F.3d at 173 ("[G]roup pleading may satisfy the source identification required by Rule 9(b).").

### III

For the foregoing reasons, the motions to dismiss are denied.

**SO ORDERED**.

                                                  /S/ Frederic Block
                                                  FREDERIC BLOCK
                                                  Senior United States District Judge

Brooklyn, New York
September 30, 2016